UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| April A., | No. 22-cv-2719 (DLM) |
| Plaintiff, | |
| v. | **ORDER** |
| Martin J. O'Malley, Commissioner of Social Security Administration, | |
| Defendant. | |

Pursuant to 42 U.S.C. § 405(g), Plaintiff April A. seeks judicial review of the final decision of the Commissioner of Social Security ("Commissioner") denying their application for benefits. This matter is before the Court on the parties' cross-Motions seeking judgment on the administrative record. (Docs. 21 (Plaintiff's memorandum), 29 (Defendant's memorandum).) For the reasons below, the Court denies Plaintiff's motion, grants the Commissioner's motion, and dismisses this matter with prejudice.

**BACKGROUND**

On August 6, 2020, Plaintiff applied for Disability Insurance Benefits ("DIB") and Supplemental Security Income ("SSI"), alleging disability beginning on February 4, 2019. (Tr.[1] at 22, 292-304.) The Social Security Administration ("SSA") denied Plaintiff's claim initially and upon Plaintiff's request for reconsideration. (Tr. at 211-15 (initial denial), 219-226 (reconsideration).) Plaintiff then timely requested a hearing before an Administrative Law Judge ("ALJ"), and the ALJ held a hearing on the matter on July 7, 2021. (Tr. at 44-88.) Plaintiff was represented by counsel, appeared at the hearing, and testified on her own behalf. (*Id.*) [2]A vocational expert also testified, opining that there was a significant number of jobs in the national economy across three representative occupations listed in the Dictionary of Occupational Titles ("DOT"), each of which a person with similar limitations to Plaintiff could perform: classifier (DOT 361.687-014); inspector/hand packager (DOT 559.687-074); and small products assembler (DOT 706.684-022). (Tr. at 83-84.)

On July 30, 2021, Commissioner sent a notice of unfavorable decision to Plaintiff. (Tr. at 19-38.) The ALJ recognized that Plaintiff suffered from several severe impairments, including: depression; anxiety; bipolar disorder, post-traumatic stress disorder; obsessive compulsive disorder; gender dysphoria; obesity; traumatic brain injury ("TBI") and/or post-concussion syndrome; degenerative disc disease; and a left shoulder disorder. (Tr. at

---

[1] The Commissioner filed the consecutively-paginated transcript of the administrative record on March 21, 2023. (Doc. 19.) For ease of reference, citations to the transcript will identify the page number listed on the lower right corner of the cited document.

[2] At the outset of the hearing, Plaintiff amended the alleged onset date of disability to April 4, 2019. (Tr. at 48-49.)

25.) The ALJ also acknowledged that Plaintiff suffered from at least two non-severe, medically determinable impairments: allergic rhinitis and celiac disorder. (Tr. at 25.) The ALJ noted that Plaintiff's allergic rhinitis was well managed with over-the-counter medication; and there was no evidence of any treatment or lasting effects from Plaintiff's celiac disorder. (Tr. at 25.) Finally, the ALJ acknowledged that Plaintiff suffered from headaches, but did not categorize them as a separate disorder because they were secondary to Plaintiff's TBI/post-concussion syndrome. (Tr. at 25.)

Despite these impairments, the ALJ determined that Plaintiff retained the residual functional capacity ("RFC")[3] to perform light work[4] with the following additional limitations: lift and/or carry up to 20 pounds occasionally and 10 pounds frequently; stand and walk for up to six hours in an eight-hour workday; sit for about six hours in an eight-hour workday; occasionally climb, balance, stoop, kneel, crouch, and crawl; no exposure to hazards like heights or moving parts; only reach overhead occasionally; no driving; and only perform simple, routine tasks with no public interaction and only occasional interaction with supervisors and coworkers. (Tr. at 28.) The ALJ credited the testimony of

---

[3] "RFC is defined as the most a claimant can still do despite his or her physical or mental limitations." *Martise v. Astrue*, 641 F.3d 909, 923 (8th Cir. 2011) (quoting *Leckenby v. Astrue*, 487 F.3d 626, 631 n.5 (8th Cir. 2007)) (cleaned up).

[4] By regulation, light work "involves lifting no more than 20 pounds at a time with frequent lifting or carrying of objects weighing up to 10 pounds." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b). Even if the weight lifted is very little, "a job is in this category if it requires a good deal of walking or standing, or when it involves sitting most of the time with some pushing and pulling of arm or leg controls." 20 C.F.R. § 404.1567(b); *see also* 20 C.F.R. § 416.967(b).

the vocational expert that there are 350,000 jobs in the national economy that Plaintiff can perform given these limitations. (Tr. at 33.)

Plaintiff challenges several aspects of the ALJ's decision. First, Plaintiff maintains that the ALJ's RFC finding is not based on substantial evidence because it does not accurately and comprehensively address Plaintiff's medical conditions. Next, Plaintiff asserts that the ALJ's determination that there were jobs available for Plaintiff was erroneous because it was based on a faulty RFC and because it failed to account for the geographic location of those jobs. The Court addresses each issue in turn.

## ANALYSIS

This Court reviews the ALJ's denial-of-benefits decision to determine whether it is supported by substantial evidence in the record as a whole, and whether the decision was infected by legal error. 42 U.S.C. § 405(g); *Austin v. Kijakazi*, 52 F.4th 723, 728 (8th Cir. 2022). Substantial evidence means "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1138, 1154 (2019)(cleaned up) (further citation omitted); *see also Nash v. Comm'r, Soc. Sec. Admin*, 907 F.3d 1086, 1090 (8th Cir. 2018) (characterizing "substantial evidence" as "less than a preponderance, but enough that a reasonable mind would find it adequate to support the Commissioner's conclusions"). Courts reviewing ALJ decisions must look to the entire administrative record to determine whether it contains sufficient evidence to support (or detract from, as the case may be) the ALJ's conclusion. *Biestek*, 139 S. Ct. at 1154; *Grindley v. Kijakazi*, 9 4th 622, 627 (8th Cir. 2021). Where substantial evidence supports

the ALJ's decision, the Court will not reverse, even if substantial evidence also supports a contrary outcome. *Nash*, 907 F.3d at 1089.

## ANALYSIS

**I.  SUBSTANTIAL EVIDENCE SUPPORTS THE ALJ'S RFC DETERMINATION.**

Plaintiff contends the ALJ's RFC was not supported by substantial evidence because it understated the severity of both Plaintiff's physical and mental impairments. In so doing, Plaintiff also challenges the ALJ's analysis of Plaintiff's prior administrative medical findings.

It is Plaintiff's burden to establish that his RFC should have included greater limitations than imposed by an ALJ. *Young v. Apfel*, 221 F.3d 1065, 1069 n.5 (8th Cir. 2000) (citing 20 C.F.R. §§ 404.1520(a), (e), (f); 404.1545-46; 404.1560-61; *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987); *Anderson v. Shalala*, 51 F.3d 777, 779 (8th Cir. 1995)). The question before the Court is whether a reasonable mind could accept that no such limitations are necessary on this record, as the ALJ found. *Biestek*, 139 S. Ct. at 1154. In considering this question, the Court does not substitute its own judgment for that of the ALJ by reweighing the evidence; instead, it must consider evidence that supports and detracts from the ALJ's decision and affirm the ALJ's decision where "it is possible to draw two inconsistent positions from the evidence and one of those positions represents the ALJ's findings." *Milam v. Colvin*, 794 F.3d 978, 983 (8th Cir. 2015) (quoting *Perkins v. Astrue*, 648 F.3d 892, 897 (8th Cir. 2011)).

The ALJ accepted that Plaintiff had several severe physical impairments and imposed significant limitations in Plaintiff's RFC based on these impairments. (Tr. at 28.) But Plaintiff contends the ALJ erred nonetheless, primarily by not relying more heavily on historical state agency medical and psychological opinions that would have supported further restrictions. Specifically, Plaintiff contends that while the RFC adopted a number of the physical restrictions suggested in the state agency medical opinions, it was error not to impose handling limitations consistent with Plaintiff's gross manipulation impairments. (Tr. at 102-03, 158.) As for mental limitations, Plaintiff faults the ALJ for not adopting all workplace restrictions suggested by the state agency medical opinions that Plaintiff could only work in a predictable environment with no rate quota or time constraints. (Tr. at 108, 165.)

By regulation, an ALJ must consider a number of factors in evaluating the persuasiveness of prior administrative medical findings but prioritize the factors of supportability and consistency as the most important. 20 C.F.R. §§ 404.1520c(a), (b)(2), 416.920c(a), (b)(2). While "supportability" and "consistency" are terms of art, the regulations indicate that, as used in this context, the words mirror their everyday meaning: supportability means that a prior administrative medical finding will be considered more persuasive the more it is supported by objective medical evidence; consistency means that a prior administrative medical finding will be more persuasive if it is consistent with the other medical and nonmedical sources relevant to Plaintiff's claim. 20 C.F.R. §§ 404.1520c(c)(1)-(2), 416.920c(c)(1)-(2). "The ALJ need not use the magic words of

'supportability' and 'consistency,' but it must be clear they were addressed." *Diane M. W.*, No. 20-cv-2651 (SRN/ECW), 2022 WL 4377731, at *5 (D. Minn. Sept. 22, 2022) (citing *Svendsen v. Kijakazi*, No. 1:21-cv-1029 (CBK), 2022 WL 2753163, at *8 (D.S.D. July 14, 2022); *Goss v. Kijakazi*, No. 4:21-cv-0663 (LPR/JJV), 2022 WL 1511521, at *3 (E.D. Ark. May 12, 2022)).

In this case, the Court has determined that the ALJ conducted an appropriate evaluation of the prior administrative medical and psychological opinions. As for the medical findings, the ALJ largely accepted the limitations set forth in the administrative opinion[5] because they were "consistent with" Plaintiff's ailments and "supported . . . with appropriate citations to the evidence of record." (Tr. at 31.) But as for the administrative opinion's reduced-handling limitation, the ALJ found this "excessive when compared with only the few instances of observed slightly reduced grip strength." (Tr. at 31.)

As for the opinions of the state agency psychological consultants, the ALJ acknowledged that the opinions were supported by record evidence. But the ALJ found that the opinions imposed "a significant restriction that lacks consistency with the evidence of record," namely, requiring a predictable workplace with no time constraints or rate quotas. (Tr. at 32.) According to the ALJ, such restrictions were inconsistent with evidence that Plaintiff was able to handle personal hygiene, prepare foods, assist with household chores, demonstrate adequate insight, and possess normal judgment. (Tr. at 32.)

---

[5] An ALJ may, as here, "accept some, but not all, of a medical opinion." *Austin*, 52 F.4th at 729.

Plaintiff asserts that the ALJ did not conduct a thorough enough evaluation of these administrative opinions to allow a court to sufficiently review the matter. That is incorrect. The ALJ explained what areas of the prior administrative medical and psychological opinions were being adopted, what areas were not, and why. The ALJ specifically addressed the issues of consistency and supportability. And the ALJ's conclusions reflect a careful and thoughtful consideration of which limitations were supported by the record as a whole. Nothing more is required analytically. And while Plaintiff may disagree with the ALJ's conclusions, this Court may not reverse even if it "would have reached a different conclusion than the Commissioner or because substantial evidence supports a contrary conclusion." *Fentress v. Berryhill*, 854 F.3d 1016, 1021 (8th Cir. 2017) (quoting *Igo v. Calvin*, 839 F.3d 724, 728 (8th Cir. 2016)) (cleaned up). Here, no error attached to the ALJ's analysis or conclusions regarding the state administrative medical or psychological findings, and substantial evidence supported the ALJ's determination of Plaintiff's RFC.

## II.   NO ERROR ATTACHED TO THE ALJ'S RELIANCE ON THE TESTIMONY OF THE VOCATIONAL EXPERT.

Plaintiff next contends that the ALJ erred by relying on the testimony of the vocational expert in three ways. First, because the RFC hypothetical posed to the vocational expert did not include all of Plaintiff's limitations, the vocational expert could not accurately assess whether jobs existed which Plaintiff could perform. Second, Plaintiff suggests that the available jobs identified by the ALJ had a higher reasoning level than Plaintiff could perform even under the ALJ's formulation of the RFC. Finally, Plaintiff contends that the vocational expert's testimony about what jobs existed in the national

8

economy did not answer the more salient question about whether there were jobs available regionally.

### A. The ALJ's properly formulated RFC served as an accurate basis for the vocational expert's opinion.

Plaintiff's first contention is rooted in Plaintiff's challenge to the RFC: according to Plaintiff, since the RFC was incomplete, vocational evidence based on that RFC was also wrong. "A vocational expert's testimony constitutes substantial evidence when it is based on a hypothetical that accounts for all of the claimant's proven impairments." *Hulsey v. Astrue*, 622, F.3d 917, 922 (8th Cir. 2010) (citing *Grissom v. Barnhart*, 416 F.3d 834, 837 (8th Cir. 2005)). As discussed above, the hypothetical posed to the vocational expert was based on an appropriately tailored RFC. Thus, Plaintiff's claim of error here fails.

### B. The vocational expert's opinion was properly supported.

Plaintiff next argues that the jobs identified by the vocational expert were inconsistent with the hypothetical posed by the ALJ. More specifically, Plaintiff notes that the RFC had a limitation to simple, routine tasks, and asserts that each of the job categories identified by the vocational expert have a DOT reasoning level of 2, which requires more than the ability to complete simple, routine tasks.

Level 2 reasoning "is the ability to apply commonsense understanding to carry out detailed but uninvolved written or oral instructions and to deal with problems involving a few concrete variables in or from standardized situations." *Galloway v. Kijikazi*, 46 F.4th 686, 690 n.2 (8th Cir. 2022) (quoting DOT App. C) (cleaned up). The Eighth Circuit has found no direct conflict between a hypothetical involving "simple, routine and repetitive

9

work activity and a vocational expert's identification of occupations involving instructions that, while potentially detailed, are not complicated or intricate." *Galloway*, 46 F.4th at 690 (quoting *Moore v. Astrue*, 623 F.3d 599, 604 (8th Cir. 2010)) (cleaned up). And "[n]umerous other courts have concluded that an RFC allowing a party to perform simple, routine, and repetitive tasks does not prohibit the performance of jobs requiring a reasoning level of two." *Gustafson v. Astrue*, No. 10-cv-4962 DSD/LIB, 2011 WL 6219641, at *7 (D. Minn. Nov. 29, 2011) (citing cases), *R. and R. adopted,* No. 10-cv-4962 DSD/LIB, 2011 WL 6218211 (D. Minn. Dec. 14, 2011). It was not error for the ALJ to rely on testimony from the vocational expert that Plaintiff could perform jobs with a DOT reasoning level of 2.

**C.    Vocational expert testimony that there were 350,000 jobs available in the national economy was sufficient to meet the Commissioner's burden to establish there was work available to Plaintiff.**

Finally, Plaintiff contends that there was not substantial evidence to support the ALJ's conclusion that there are a significant number of jobs which Plaintiff could perform. The ALJ relied on the testimony of the vocational expert that there were at least 350,000 jobs in the national economy available to a person like Plaintiff. (Tr. at 33.) Plaintiff acknowledges this testimony, but nonetheless asserts the real question is *where* those jobs exist, since if they are all too far away that is the same as no jobs at all.

According to the Social Security Act, a person is only deemed disabled if they cannot engage in work "which exists in the national economy." 42 U.S.C. § 423(d)(2)(A). But as many courts have noted, "work which exists in the national economy" is a term of

art whose meaning is not readily apparent; what it actually means is not jobs that exist somewhere in the country, but rather jobs interspersed *throughout* the country, or at least in the region where Plaintiff lives. *See, e.g.*, *Samantha M.A. v. O'Malley*, 22-cv-3119 (TNL), 2024 WL 841270, at *6-8 (D. Minn. Feb. 28, 2024); *Shari B. v. Kijakazi*, 22-cv-1539 (DJF), 2023 WL 6130679, at *7-9 (D. Minn. Sept. 19, 2023). And as recognized in both *Samantha M.A.* and *Shari B.*, there is an intracircuit split on whether a vocational expert's testimony solely concerning the number of DOT occupations available nationwide will carry the Commissioner's burden (at step five of the sequential analysis) to show that there are a significant number of jobs available in Plaintiff's region: some courts have found such testimony insufficient, while others have accepted that evidence of a significant number of jobs nationwide supports the inference that there are jobs within a claimant's region, too (at least absent some indication the occupations themselves are specialized or geographically isolated). *Id.*

This Court agrees that the analytical framework set forth in *Samantha M.A.* and *Shari B.* is appropriate and consistent with this Court's function in reviewing SSA matters. As the Eighth Circuit has emphasized, courts such as this one must take a multi-factored, common-sense approach to determining whether the Commissioner met his burden to establish that there are available jobs in significant numbers. *Johnson v. Chater*, 108 F.3d 178, 180 (8th Cir. 1997); *Hall v. Chater*, 109 F.3d 1255, 1258-59 (8th Cir. 1997). And while it is preferable for a vocational expert to opine on the regional availability of such jobs, the absence of such direct evidence does not necessarily mean the Commissioner has

failed to carry his burden. That is particularly true in a case like this, where the vocational expert testified that there were 350,000 jobs available throughout at least three classifications, none of which appear to suggest the jobs would be specialized or geographically isolated. To hold that there was not substantial evidence of available jobs for Plaintiff despite evidence that there were 350,000 jobs available nationally would contradict the commonsense approach set forth by the Eighth Circuit and endorsed by other courts in this District.[6]

## ORDER

Based on the above findings, as well as the files, records, and proceedings above,

**IT IS ORDERED THAT**:

1. Plaintiff's Motion (Doc. 21) is **DENIED**; and

2. The Commissioner's Motion (Doc. 29) is **GRANTED.**

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

DATED: March 14, 2024             _s/Douglas L. Micko_____
                                                           DOUGLAS L. MICKO
                                                           United States Magistrate Judge

---

[6] The Court acknowledges, as in *Shari B.*, that there may be circumstances where a vocational expert's testimony about the number of jobs available nationally will not be sufficient to carry the Commissioner's burden. *See, e.g., Shari B.*, 2023 WL 6130679, at *9 (testimony of 18,000 jobs in the national economy presented a "close case" but ultimately insufficient evidence to meet Commissioner's burden). This is not such a case.